NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
DORIS JONES,                        :
                                    :
            Plaintiff,              :       Civil No. 07-770 (RBK)
                                    :
      v.                            :       **OPINION**
                                    :
MICHAEL J. ASTRUE, COMMISSIONER     :
OF SOCIAL SECURITY,                 :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Doris Jones ("Jones"), pursuant to 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, the Court affirms the ALJ's decision.

**I.     BACKGROUND**

Jones alleges that she is disabled with an onset date of February 17, 2000. Specifically, she alleges disability as a result of chronic pain in her right shoulder as well as discogenic and degenerative disorders of the lower back.

Jones' shoulder and back injuries arose while employed as a nurse's aide at Bishop McCarthy Residence on May 26, 1998. (R. at 165.) Jones was helping to lift a patient when she

1

felt a pain in her right shoulder. (R. at 184.) A subsequent MRI of her right shoulder revealed tendinitis and acromioclavicular arthritis. (R. at 180-82.) In December of 1998, Jones underwent arthoscopic surgery to correct a right shoulder impingement, acromioclavicular joint arthritis, and rotator cuff tendinopathy. (R. at 193-97.) At a follow up evaluation in January 1999, Dr. Robert N. Dalsey noted Jones was "doing quite well and recovering uneventfully." (R. at 209.) Dr. Dalsey also noted that he expected Jones to "regain strength" with no "further problems." (R. at 209.) Check up reports by Dr. Dalsey in March, September, and October 1999 failed to reveal any changes to her condition. (R. at 206.)

The record contains no additional medical evidence until April 26, 2001, when Marshall Pressman, D.O. evaluated Jones at the request of the state Division of Disability Determination Services. (R. at 225-31.) During the evaluation, Jones complained of right shoulder pain ranging from five to ten on a ten point scale and lower back pain ranging from four to nine. (R. at 225.) This pain was aggravated by sitting, standing, walking, crawling, stooping, bending, and neck rotation. (R. at 226.) However, Jones stated that the use of hot showers, Motrin, and change of position helped to ease the level of discomfort. (R. at 225.) The physical examination revealed a decreased range of motion in the cervical spine and right shoulder. (R. at 227.) Dr. Pressman's diagnosis noted "probable right impingement syndrome" and "history of herniated L4-L5 lumbar disc." (R. at 228.)

On August 15, 2001, a Physical Residual Functional Capacity Assessment was conducted by State Agency Review Physician F.J. Miranda, M.D. (R. at 232-39.) Dr. Miranda indicated that Jones was able to frequently lift up to twenty-five pounds, stand and walk for up to six hours, and sit for less than six hours in an eight hour day. (R. at 233.) She also had unlimited

pushing and pulling ability.  (R. at 233.)  A limited use of the right overhead reach was noted as well.  (R. at 235.)

In April of 2002, Jones underwent arthoscopic acromioplasty of the right shoulder by Dr. Thomas Dwyer.  (R. at 240-79.)  A month later, Dr. Dwyer noted that Jones was "doing well" but should continue therapy because of significant disuse atrophy on her shoulder.  (R. at 281.)  After a follow-up visit in October 2002, Dr. Dwyer noted that Jones' right shoulder had markedly improved.  (R. at 280.)  He quoted Jones as saying, "I'm much better."  (R. at 280.)  Dr. Dwyer also noted that the patient had "attained maximal medical improvement" and "has full range of motion of her shoulder, no pain, and excellent strength."  (R. at 280.)

On September 24, 2002, Jones was again examined by Dr. Pressman.  (R. at 289.)  Pressman noted Jones' complaints of shoulder pain and difficulty sleeping.  (R. at 292.)  Then, after an examination of the shoulders, Pressman noted a decrease in internal rotation and adduction on her right shoulder.  (R. at 293.)  Pressman opined that the injuries to Jones resulted in "restricted function and lessening to a material degree of working ability."  (R. at 294.)  Jones' orthopedic impairment was "75% partial total overall with a credit of 20% based on the contribution from the right shoulder."  (R. at 294.)

On July 14, 2004, Jones was evaluated by Dr. Citta-Pietrolungo of the New Jersey Division of Disability Determination Service, who found that Jones was limited from overuse activities and lifting heavy objects.  (R. at 401-10.)  Dr. Citta-Pietrolungo diagnosed Jones with a "small herniated disc [at] L4-5" and a history of right shoulder impingement syndrome, as well as hyperthyroidism, hypotension, and an overactive bladder.  (R. at 403.)  Dr. Citta-Pietrolungo conducted a medical assessment of Jones' ability to work and noted that Jones was able to

occasionally lift up to twenty pounds, frequently lift up to ten pounds, and had no limitations affecting her ability to stand, walk, sit, or push/pull. (R. at 406-7.) Jones was able to frequently climb, balance, kneel, crouch, crawl, and stoop. (R. at 407.) Jones also had no limitations on her ability to reach, handle, finger, and feel. (R. at 408.)

On March 12, 2001, Jones filed for a period of disability, disability insurance benefits, and supplemental security income benefits, alleging disability since February 17, 2000. (R. at 60.) The application was denied both initially and on reconsideration. (R. at 60.) Jones filed a request for hearing, which was held on May 23, 2002. (R. at 60.) On August 15, 2002, Administrative Law Judge James L. D'Alessandro ("ALJ D'Alessandro") issued his decision finding Jones disabled as of April 26, 2001 but not prior thereto. (R. at 60-65.)

The decision was not appealed by Jones but was remanded by the Appeals Council. (R. at 74-76.) The matter returned to ALJ D'Alessandro on April 3, 2003, and on remand he found Jones not disabled. (R. at 14-22.) Jones appealed the decision, but the Appeals Council denied review on September 13, 2003. (R. at 4-9.) An action was subsequently filed in District Court. (R. at 354.) Pursuant to a Consent Order, the District Court remanded the matter for further action on March 22, 2004. (R. at 366.) The Appeals Council then issued a new remand order on April 7, 2004, vacating the prior decision of ALJ D'Alessandro and remanding the case for further action. (R. at 372.) ALJ Daniel N. Shellhamer reviewed the case and conducted another hearing on February 25, 2005, finding that Jones was still able to perform a range of light work and that there existed a significant number of jobs in the national economy that Jones could perform. (R. at 344.) Thus, ALJ Shellhamer concluded Jones was not disabled.

On March 16, 2005, Jones sent a letter to the Appeals Council, taking exception to the

findings by ALJ Shellhamer.  (R. at 338-40.)  The Appeals Council declined jurisdiction on January 12, 2007.  (R. at 334.)  Jones then filed this action seeking review of the decision on February 15, 2007.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.").  The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire

record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III.   DISCUSSION

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and to

analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Using the five-step inquiry, ALJ Shellhamer found that Jones had not engaged in substantial gainful activity since the alleged onset of disability. Jones met the non-disability requirements for a period of disability and disability insurance benefits through December 31, 2004. Under the next step, ALJ Shellhamer determined that although Jones' shoulder and back injuries were severe impairments, they did not meet or medically equal the criteria of any listed impairment. Next, the ALJ found that Jones could not perform any of her past relevant work but had the RFC to perform a range of light work. Relying on the testimony of a vocational expert, ALJ Shellhamer finally concluded that there existed in significant numbers in the national economy jobs that Jones was capable of performing, such as "usher," "chaperone," and "school bus monitor."

Jones argues that ALJ Shellhamer's conclusions are not supported by substantial evidence and should be reversed. First, Jones argues that ALJ Shellhamer's finding that Jones' pain allegations were not credible is inadequate because no clear rationale was stated to support the finding. Second, Jones argues that ALJ Shellhamer erred in calculating her RFC because the ALJ failed to take into account Jones' inability to use her arms and hands. Finally, Jones submits that ALJ Shellhamer's failure to include these restrictions in they hypothetical posed to the

vocational expert invalidates the expert's opinion. Without valid vocational expert testimony, Jones contends, the requirements of step five are not met because it is impossible to determine if there are a significant number of jobs available to her.

    A.    Credibility of Jones

ALJ Shellhamer's credibility assessment is supported by substantial evidence because the allegations made by Jones regarding her inability to work are inconsistent with the objective medical evidence. The Social Security Regulations provide the authoritative standard for the evaluation of a claimant's subjective complaints, including pain. Hartranft, 181 F.3d at 362. First, a claimant must establish, by objective medical evidence, a medical impairment that could reasonably support the allegations of pain or other symptoms which, when considered with all other evidence, could lead to a conclusion of disability. 20 C.F.R. § 404.1529(a). Once this threshold showing is met, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). Thus, the ALJ is required to assess the degree to which the claimant is accurately stating his subjective symptoms or the extent to which they are disabling. Hartranft, 181 F.3d at 362.

When making this credibility finding, the ALJ must indicate which evidence he rejects and which he relies on as the basis for his findings. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999) (discussing the need for specificity when assessing a claimant's credibility to ensure that the ALJ's finding is based upon objective medical evidence). The ALJ's "determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or

other symptoms and the adjudicator's personal observations." Id. (quoting Social Security Ruling 95-5P, 1995 WL 670415, at *2).  However, inconsistencies in a claimant's testimony permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible.  See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002) (upholding the ALJ's finding of no credibility because the claimant could not point to any medical evidence to support his pain allegations other than his own testimony, which was inconsistent with the allegations).

In Hartranft, the applicant alleged disability due to back injury, neck pain, hernia, anxiety, and depression.  Hartranft, 181 F.3d at 359.  Hartranft's chiropractor diagnosed him with degenerative changes of the disc at L4-L5 and L5-S1, slight central disc bulging at L4-L5, and a small central disc herniation at L5-S1.  Id. at 360.  However, examinations by three board certified physicians failed to corroborate the chiropractor's opinion of the extent of Hartranft's disability.  Id. at 362.  The ALJ found that Hartranft had the RFC for the full range of light work diminished by his inability to bend repeatedly and that Hartranft's statements regarding his pain and his ability to work were not credible.  Id.  On appeal, Hartranft argued that the ALJ failed to consider his allegations of pain.  Id.  Under the standard set by 20 C.F.R.§ 404.1529, the Third Circuit held that the ALJ's credibility determination was supported by substantial evidence because the ALJ cited to specific instances where Hartranft's allegations of pain and other symptoms were inconsistent with the objective medical evidence as well as Hartranft's own testimony regarding his rehabilitation and daily activities.  Hartranft, 181 F.3d at 362.

Similarly, ALJ Shellhamer reviewed Jones' complaints of pain in light of the medical evidence in the record and found that Jones' allegations regarding her limitations were not

9

credible. (R. at 350.) Jones testified that she could walk no more than two blocks, stand no more than one-half hour, sit no more than one-half hour to one hour, and no longer perform normal activities such as grooming herself, washing her hair, curling her hair, carrying groceries, or placing items in the oven. (R. at 346.) In his decision, the ALJ found that the objective medical evidence was inconsistent with Jones' claim of being unable to perform any work activity. (R. at 347.)

To support his conclusion, ALJ Shellhamer cited to multiple doctors' reports. (R. at 345-49.) Dr. Pressman's report in 2001, after Jones' first shoulder surgery, documented the full extent of movement for Jones' arms, shoulder, and back. (R. at 225-31.) While there was a slight decrease in strength and movement on the right shoulder, Dr. Pressman's report did not find a complete inability to move the arms. Additionally, the RFC assessment by Dr. Miranda in 2001 indicated that Jones was able to frequently lift up to twenty-five pounds, stand and walk for up to six hours, sit for less than six hours, and engage in unlimited pushing and pulling, but had limited use of the right upper extremity for reaching overhead. (R. at 232-39.) Moreover, Dr. Citta-Pietrolungo's report, following Jones' second shoulder surgery in 2002, found that Jones was limited from overuse activities and from lifting heavy objects as a result of a small herniated disc at L4-5 and a history of right shoulder impingement syndrome. (R. at 402-03.) That report states, "[f]unctional examination reveals independent gait dynamics without assistive device. She can heel walk and toe walk. She can squat and recover. Transfers were smooth and independent. Grasp manipulation, pinch and fine coordination is intact. She performs self-care activities independently." (R. at 402.) Dr. Citta-Pietrolungo also found that Jones could occasionally lift up to twenty pounds, frequently lift up to ten pounds, had no limitations

affecting her ability to stand and walk or sit or push/pull, and could frequently climb, balance, kneel, crouch or crawl and stoop, as well as reach, handle, finger, and feel.  (R. at 404-10.)

Based upon these reports, ALJ Shellhamer correctly concluded that Jones' complaints of pain and inability to work were inconsistent with the totality of the medical evidence.  Under 20 C.F.R. § 404.1529, allegations of pain must be supported by objective medical evidence.  None of the relevant medical reports support the allegations to which Jones testified.  For example, Jones testified that she could stand no more than one-half hour, and sit no more than one-half hour to one hour.  (R. at 433, 443.)  This is inconsistent with the findings in both Dr. Miranda's and Dr. Citta-Pietrolungo's reports.  Dr. Miranda found her able to stand and walk for up to six hours, and sit for less than six hours.  (R. at 233.)  Dr. Citta-Pietrolungo found Jones had no limitations affecting her ability to stand and walk or sit.  (R. at 406-07.)  The only medical evidence cited to support Jones' allegations is Dr. Miranda's report noting the limited use of the right arm when reaching.  (R. at 235.)  Nevertheless, Dr. Miranda's report as a whole is inconsistent with Jones' testimony.  Based on this lack of medical support for Jones' allegations of pain, ALJ Shellhamer was entitled to find her allegations less than credible.  Thus, ALJ Shellhamer's credibility finding was thoroughly explained in the decision and is supported by substantial evidence.

B.    Jones' Residual Functional Capacity Calculation

Jones argues that ALJ Shellhamer erred in calculating her RFC because he did not take into account her arm and hand limitations.  At the hearing in front of ALJ Shellhamer, Jones testified that her back and shoulder conditions prevented her from engaging in any work activity.  In addition to the shoulder impairment, which required two separate surgeries, two herniated

discs in her lumbar spine allegedly prevented Jones from walking more than two blocks or standing for more than one-half hour. Jones also testified that she was unable to exercise, groom herself, wash her hair, curl her hair, carry groceries, or place items in the oven. Thus, in light of Jones' testimony, as well as Dr. Miranda's assessment that Jones had limited use of her right arm for reaching overhead, Jones argues that her arm and hand limitations should have been included in the calculation.

At step four of the analysis, the Commissioner determines whether, despite her severe impairments, the claimant retains the RFC to perform her past relevant work. See 20 C.F.R. §§ 404.1520(e), (f). The RFC reflects "what the claimant can still do despite her limitations." See 20 C.F.R. § 404.1545(a). In making this determination, "the ALJ must consider all evidence before him." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Thus, "[a]lthough the impairment must be medically determinable, it need not be a 'severe' impairment to be considered in the RFC assessment." Rutherford v. Barnhart, 399 F.3d 546, 554 n.7 (3d Cir. 2005); see also 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether such impairment, if considered separately, would be of sufficient severity."). The determination of a claimant's RFC is the exclusive responsibility of the ALJ. See 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

Significantly, the ALJ need only include in the RFC those limitations which he finds to be credible. See Hartranft, 181 F.3d at 362 (upholding the ALJ's finding that claimant's allegations were exaggerated and properly discounted because the medical evidence and claimant's own testimony were inconsistent with the allegations). A lack of evidentiary support in the medical record is a legitimate reason to exclude claimed limitations from the RFC.

Rutherford, 399 F.3d at 555.  Thus, because ALJ Shellhamer found Jones' testimony regarding her limitations not to be credible, as previously discussed, ALJ Shellhamer properly excluded them from the RFC.  See Burns, 312 F.3d at 129 ("With this contradictory testimony and the lack of significant medical evidence or a medical opinion fully supporting his subjective assessment of his limitations or complaints of pain . . . we cannot say that substantial evidence did not support the ALJ's ruling or his rejection of parts of Burns' testimony as not fully credible.")

In his opinion, ALJ Shellhamer relied directly on the medical evidence submitted to find that Jones could perform a range of light work.  Based on Dr. Miranda's report, Jones maintained the RFC to frequently lift up to twenty-five pounds, stand and walk for up to six hours, sit for less than six hours, and engage in unlimited pushing/pulling with a limited use of the right upper extremity for reaching overhead.  (R. at 233-39.)  Dr. Citta-Pietrolungo found that Jones could occasionally lift up to twenty pounds, frequently lift up to ten pounds, and had no limitations on standing, walking, or sitting.  (R. at 406-07)  Jones could also frequently climb, balance, kneel, crouch, crawl, and stoop and had an unlimited ability to reach, handle, finger, and feel.  (R. at 407-08.)

Jones argues that the ALJ failed to take into account the limitation in her ability to use her arms.  However, these limitations were addressed in both medical reports.  First, the report by Dr. Miranda specifically addressed Jones' arm limitations by measuring her ability to lift, push, pull, reach, handle, finger, and feel.  (R. at 233-35.)  Jones' limited reach of the right arm was documented in this report.  (R. at 235.)  Second, the report by Dr. Citta-Pietrolungo addressed the same arm limitation by measuring Jones' ability to lift, push, pull, reach, handle, finger, and feel.  (R. at 406-09.)  Both doctors recognized and took into account Jones' previous shoulder

surgeries as well as her past medical history, yet neither doctor reported any limitation that indicated a complete inability to use the right arm. By citing to these medical reports, ALJ Shellhamer did take into account Jones' limitations but only to the extent supported by the record. Because the ALJ considered all of the credible medical evidence before him, his RFC finding is supported by substantial evidence.

      C.     Vocational Expert Testimony

Jones argues that ALJ Shellhamer erred by failing to include Jones' alleged arm and hand restrictions in the hypothetical posed to the vocational expert. As a result, the vocational expert's opinion was invalid, and without the valid expert testimony, Jones argues that step five of the analysis was not properly supported by substantial evidence.

In drawing a conclusion at step five, the ALJ may rely on testimony from a vocational expert. Rutherford, 399 F.3d at 551. Routinely, an ALJ will pose a hypothetical question to the expert, asking whether work exists in significant numbers in the national economy that could be performed by a person with the claimant's medical impairments, age, education, past work experience, and RFC. This hypothetical must "reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (finding that substantial evidence did not support a vocational expert's opinion because hypothetical posed disregarded appellant's testimony of pain even though medical reports were not inconsistent with the testimony); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) (finding that the hypothetical posed to the vocational expert was defective because ALJ did not include appellant's impairments of dizziness and blurred vision, which were medically undisputed.) If the question does not reflect all of a claimant's undisputed impairments, "the

expert's response is not considered substantial evidence" of whether work exists in significant numbers in the national economy that could be performed by the claimant.  Burns, 312 F.3d at 123.

Although the hypothetical must reflect all of the claimant's impairments, it is not required to reflect every impairment alleged by the claimant.  Rutherford, 399 F.3d at 554.  In Rutherford, the plaintiff argued that weakness in her right arm and pain in her lower back, among other ailments, were impairments that contributed to her inability to work.  Id. at 551.  The ALJ found that her disability did not equal a listed impairment, and that although Rutherford could no longer perform her past work, she could perform a significant number of other jobs in the economy.  Id. at 552.  The ALJ discounted Rutherford's testimony as "exaggerated and only fairly credible."  Id. at 552.  Rutherford appealed the decision, arguing that the hypothetical posed to the vocational expert was invalid because the ALJ failed to consider her physical limitations pursuant to the Court's holdings in Podedworny and Burns.  Rutherford, 399 F.3d at 553 ("[E]xtreme drowsiness caused by her medication, lack of manual dexterity, need to use a cane and need for a sit-stand option.").  The Third Circuit held that Burns and Podedworny must be read to hold that the hypothetical posed must "accurately portray" the claimant's impairments and the expert must be given the opportunity to evaluate those impairments "as contained in the record."  Rutherford, 399 F.3d at 554.  The term "all impairments" contains only those limitations which are medically and credibly established.  Id.  Rutherford's limitations were properly discounted by the ALJ because they were not supported by the medical record and were inconsistent with her testimony.  Id. at 555-56.

Here, the ALJ found that Jones had the RFC to be able to perform light work based on the

medical record. As such, the ALJ's hypothetical reflected only what was credibly established in the medical record, and Jones' alleged limitations were properly excluded. The vocational expert was first given a hypothetical where the individual had the ability to walk up to three hours per day, stand up to two hours per day, sit up for up to four hours per day and up to thirty minutes without interruptions, and lift up to ten pounds. (R. at 346.) The vocational expert was then given a hypothetical in which an individual could stand for up to three hours, walk up to two hours, and could lift up to ten pounds frequently and twenty pounds occasionally. (R. at 346.) In both hypotheticals, the vocational expert found that jobs existed in significant numbers both nationally and regionally. (R. at 346.) Thus, because the hypotheticals given to the vocational expert accurately reflected all of Jones' medically supported impairments and jobs existed in significant numbers based on those criteria, the conclusion by ALJ Shellhamer at step five was proper and precludes a finding of disability.

IV.     CONCLUSION

Because ALJ Shellhamer's decision is supported by substantial evidence in the record, this Court affirms his decision that Jones was not disabled and is therefore not entitled to DIB. An accompanying order shall issue today.


Dated:   2/29/2008                                            /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge